# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: October 25, 2018

**No. A-1-CA-35203**

**CORLINDA H. LUJAN,**
**IDA M. LUJAN, and PABLO LUJAN,**

Plaintiffs-Appellants,

**v.**

**ACEQUIA MESA DEL MEDIO, A NEW**
**MEXICO COMMUNITY DITCH**
**ASSOCIATION, et al.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Judge**

Montgomery & Andrews, P.A.
Randy S. Bartell
Santa Fe, NM

Ida M. Lujan
Santa Fe, NM

for Appellants

Humphrey & Odé, P.C.
Mary E. Humphrey
El Prado, NM

Peter B. Shoenfeld, P.A.
Santa Fe, NM

for Appellees

**OPINION**

**FRENCH, Judge.**

{1}	Corlinda Lujan appeals from the dismissal of her second amended complaint (Complaint) in which she sought declaratory relief, injunctive relief, and monetary damages. Her Complaint alleges, among other things, that she is entitled to the use of water appurtenant to 42.2 acres of land from the Rio Puerco de Chama based upon a decree issued by the district court in Rio Arriba County in 1962 (the *Chacon* Decree), and that the Acequia Mesa Del Medio (the Acequia) has consistently refused to distribute water according to the terms of the *Chacon* Decree. The district court dismissed Lujan's Complaint for lack of subject matter jurisdiction, concluding that the federal district court adjudicating all water rights of the Rio Chama stream system (the adjudication court), which includes the Rio Puerco de Chama, has exclusive jurisdiction over Plaintiff's claims. *See State ex rel. State Engineer v. Aragon*, United States District Court Cause No. 69cv07941 BB (mem. op. and order) (D.N.M. Jan. 31, 2011). We reverse, concluding that the district court has jurisdiction over the subject matter of Lujan's Complaint.

**BACKGROUND**

**Procedural History Concerning the Chama General Stream System Adjudication**

{2}	In 1948, the Acequia, two other acequias, and members of the acequias initiated a water rights adjudication for the Rio Puerco in the district court in Rio

Arriba County, (hereinafter the *Chacon* lawsuit). *Chacon v. Chacon*, Rio Arriba County Cause No. 4922. By 1961, Lujan came to own a tract of land that is irrigated by the water diverted by the Acequia from the Rio Puerco. The *Chacon* court issued the *Chacon* Decree one year later, which "determine[d] the rights of the respective claimants to divert and beneficially use the waters of the Rio Puerco de Chama and its tributaries[.]" The *Chacon* Decree provides the names of the claimants entitled to the use of the water who are members of the Acequia, the legal description of the land they own, and the number of acres of land they own, and thereby fixes and determines the rights to the water that is appurtenant to the described land. It lists Lujan as owning 42.2 acres of land as mapped by the hydrographic survey prepared by the State Engineer during the first phase of the adjudication (Map 19).

{3}     Several years after the issuance of the *Chacon* Decree, the State Engineer moved to consolidate the ongoing *Chacon* lawsuit with another suit, *State of New Mexico v. Ramon Aragon*, Rio Arriba County Cause No. 8294, to determine the claims to all water rights of the Rio Chama stream system because the Rio Puerco is a tributary of the Rio Chama. Accordingly, *Chacon* was consolidated with *Aragon* and one year later, the *Aragon* court ordered that all of the preliminary, interlocutory, and final orders entered in *Chacon* be "confirmed and adopted as if originally entered herein[.]" The order specifically addresses the *Chacon* Decree,

2

referring to it as "the Partial Final Decree in the Rio Puerco de Chama section[.]" The order states that the *Chacon* Decree is a final and appealable order that "defin[es] the rights of the [claimants] as against the State of New Mexico" and "as between and among all [claimants] *inter se*, in the various sub-files in this cause[.]" The *Chacon* Decree was renamed and entitled "Partial Final Judgment and Decree Relating to the Public Waters of the Rio Puerco de Chama." *Aragon* was then removed to federal court (adjudication court), where it continues as an active general stream system adjudication. *See Aragon*, United States District Court Cause No. 69cv7941 BB (mem. op. and order) (D.N.M. Jan. 31, 2011).

**Background Pertaining To This Appeal**

{4}    In 2011 Lujan sued the Acequia, the mayordomo, and the officers and commissioners of the Acequia, alleging that they have not been distributing water for irrigation according to the terms of the *Chacon* Decree and that the method of distribution unfairly diminishes her right to water appurtenant to her 42.2 acres of land as described in the *Chacon* Decree. Lujan's original complaint sought: (1) a declaratory judgment recognizing her adjudicated water rights and requiring fair and equal water distribution to all Acequia members in accordance with the *Chacon* Decree; (2) declarations that the Acequia must comply with statutory provisions relating to acequias and ditches, NMSA 1978, Sections 73-2-1 to 73-2-68 (1851-52, as amended through 2006); and (3) an injunction preventing the

3

Acequia and its officers and commissioners from otherwise harassing Lujan at Acequia meetings.

{5}     The Acequia and other named defendants moved to dismiss the complaint for failure to join necessary parties, arguing that Lujan sought relief under the Declaratory Judgment Act, which requires that all persons "who have or claim any interest which would be affected by the declaration" shall be made parties. NMSA 1978, Section 44-6-12 (1975). They argued that the rights of a member to water diverted by the acequia are not proportional to the number of acres of land a member owns as listed in the *Chacon* Decree. They contended that Lujan asked the district court to enter a declaration that would change the rights of the acequia members to be proportional to the number of acres adjudicated to the tracts of land they own. According to the Acequia, the changes sought by Lujan would affect the rights of all members of the Acequia, and possibly adjacent acequias, as they have or may claim to have an interest that would be affected by such a declaration. The Acequia also argued that in order for Lujan to have water rights, she must be the owner of the land to which the water rights are appurtenant, and that other persons, namely Jose and Magdalena Martinez, now claim an interest in Lujan's original acreage.

{6}     The district court granted the Acequia's motion (the June 2012 order) despite Lujan's opposition to it based upon its finding that Lujan's original

4

complaint sought several declarations pursuant to the Declaratory Judgment Act. The court found that all acequia members, the commissioners of two adjacent acequias, and the Martinez's "have or claim an interest that would be affected by the declarations" sought in her complaint, and she "shall have the opportunity to amend her complaint to join" them. The court allowed her ninety days to amend her complaint and serve the parties joined.

{7}     Lujan amended the original complaint to include the parties provided in the district court's order (first amended complaint). The first amended complaint also contained additional allegations. One of those allegations claimed that the Acequia held a special meeting to discuss the Acequia's response to the lawsuit, during which it modified its irrigation schedule "for the sole purpose of reducing [Lujan]'s historic irrigation time from [forty-two] hours to [twenty-four] hours," and assigning the eighteen-hour difference to the newly-named Martinez defendants.

{8}     The Acequia and newly-named defendants (collectively, Defendants) moved to dismiss the first amended complaint for lack of subject matter jurisdiction under Rule 1-012(B)(1) NMRA. They argued that Lujan's first amended complaint hinged on two declarations that she sought from the court: (1) that she has water rights under the *Chacon* Decree to irrigate 42.2 acres of land, and (2) that her neighbors, the Martinezes, are not the owners of any of the 42.2 acres of water

rights decreed in Lujan's name. Defendants asserted that "such declarations are within the exclusive jurisdiction of the general adjudication court for the Rio Chama stream system." They argued that Lujan claims to have irrigated and continues to irrigate land that is

not, according to Map 19, shown as irrigated acreage, and that "irrigation water rights are appurtenant to the land on which they are used." They contended: "Resolution of [Lujan]'s complaint then is entirely dependent upon the determination of her claims to the use of water. [Lujan] has now asserted 'error' in the underlying hydrographic survey from the 1950's; by claiming that the hydrographic survey is in error, she has invoked the jurisdiction of the general adjudication court, which has exclusive jurisdiction to determine the specific place of use of the land to which [Lujan]'s claimed water rights are appurtenant." In other words, according to Defendants, Lujan sought a re-adjudication of all of the rights to the water of the Rio Puerco.

{9} In a separate motion, Defendants argued that Rule 1-019(A) NMRA required Lujan to join the State Engineer and other private parties, and that her failure to do so deprived the district court of jurisdiction because resolution of her claims requires a change in the location of the adjudicated water rights, which "may only be accomplished after application to and approval of the state engineer." Again, despite Lujan's opposition to both motions,—in which she argued that Defendants' motions are "predicated on their mischaracterization" of her claims as "seeking to re-adjudicate her water rights" and that her claims are "isolated in nature, involve interpretation of her pre-exiting legal rights, and do not concern any issue involved in the Rio Chama water rights adjudication"—the district court agreed with

7

Defendants, finding that the State Engineer and other named persons were necessary parties. The district court concluded that Lujan "shall have sixty (60) days to amend her complaint to join the necessary parties[,]" and that her first amended complaint "shall be dismissed if [she] fail[s] to join the necessary parties" within the time allotted. Thereafter, Lujan named the State Engineer as a defendant in her Complaint, and again sought declaratory relief, injunctive relief, and monetary damages.

{10}    Defendants moved to dismiss again, continuing to argue that the adjudication court has exclusive jurisdiction over Lujan's claims. The State Engineer also separately moved to dismiss for failure to state a claim upon which relief can be granted and to be dismissed as a party because the State Engineer has no interest in the suit. In response, Lujan maintained that Defendants mischaracterized her claims and that she was "not asking th[e c]ourt to adjudicate any water rights at all." Rather, she sought "declarations recognizing rights already determined in the [*Chacon* Decree] entered" over fifty years ago, and her "sole purpose in seeking such declarations is to ensure the Acequia's fair treatment of her in accordance with the law." In support of the State Engineer's motion to be dismissed from the suit, Lujan agreed that her "claims involve personal disputes between members of the Acequia and the legal recognition of water rights

8

adjudicated in the [*Chacon*] Decree," and she urged the district court to grant the State Engineer's motion.

{11} After a hearing, the district court granted both the State Engineer's motion, dismissing it as a defendant in the suit, and Defendants' motion to dismiss for lack of subject matter jurisdiction (October 2015 order) It found that resolving the issues surrounding Lujan's water rights would require interpretation of the *Chacon* Decree. The district court relied upon NMSA 1978, Section 72-4-19 (1907), believing that it provides that the adjudication of irrigation water rights calls for the district court to determine the specific tracts of land to which the irrigation water rights are appurtenant, and as it applies to Lujan's claims, requires dismissal for resolution in the adjudication court. Thus, the district court concluded: "Determination of the specific location of the lands with water rights should be in the adjudication court of the Rio Chama stream system" because "[t]he adjudication court has exclusive jurisdiction to make determinations regarding the elements of a water right, including the specific tract of land to which an irrigation water right is appurtenant." The court dismissed Lujan's Complaint "in all things."

{12} Lujan appeals all three orders: (1) the June 2012 order requiring Lujan to add parties necessary to the resolution of her Complaint under the Declaratory Judgment Act; (2) the February 2015 order requiring Lujan to join the State Engineer and three other specifically named persons as necessary parties under

9

Rule 1-019; and (3) the October 2015 order dismissing Lujan's Complaint for lack of subject matter jurisdiction because the adjudication court has exclusive jurisdiction over Lujan's claims.

**DISCUSSION**

{13}   First, we address Lujan's argument that the district court, not the adjudication court, has jurisdiction over the subject matter of her Complaint. We then turn to the orders providing leave to join additional parties.

**I.    The District Court Has Jurisdiction Over Lujan's Complaint**

{14}   We review questions of subject matter jurisdiction de novo. *Best v. Marino*, 2017-NMCA-073, ¶ 19, 404 P.3d 450, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-36586 (Aug. 31, 2017). State district courts are courts of general jurisdiction "having the power to hear all matters not excepted by the constitution and those matters conferred by law." *Id.* ¶ 20 (internal quotation marks and citation omitted). The jurisdiction of adjudication courts with regard to water law, however, is set out in Chapter 72 of our statutes. Adjudication courts have "exclusive jurisdiction to hear and determine all questions necessary for the adjudication of *all* water rights within the stream system involved[.]" NMSA 1978, § 72-4-17 (1965) (emphasis added). Once all of the rights to the use of the water of the entire stream system have been adjudicated among the claimants, the district court issues a decree. *See* § 72-4-19. The decree must declare "as to the water right adjudged to each party,

10

the priority, amount, purpose, periods and place of use," and for water used for irrigation, the decree must specify the tracts of land to which the right is appurtenant. *Id.* Thus, once a stream system has been adjudicated or partially adjudicated and a decree issued, jurisdiction over claims related to the enforcement of the decree—as opposed to claims seeking an adjudication of the water rights to be decreed—properly rests with the district court. *See City of Raton v. Vermejo Conservancy Dist.*, 1984-NMSC-037, ¶ 1, 101 N.M. 95, 678 P.2d 1170 (demonstrating the state district court's exercise of its general jurisdiction over a claim brought by the City of Raton against a water conservancy district alleging improper withholding of water in excess of senior rights set forth in a decree issued decades prior to the suit, and seeking a declaration of water rights based upon that decree); *El Paso & R. I. Ry. Co. v. Dist. Court of Fifth Judicial Dist.*, 1931-NMSC-055, ¶ 21, 28, 36 N.M. 94, 8 P.2d 1064 (holding that a state district court cannot exercise its general jurisdiction over a claim brought by water rights claimants against the operator of a railroad seeking an injunction of the railroad's use of water where an ongoing general adjudication has already begun and no decree has been issued); *Harkey v. Smith*, 1926-NMSC-011, ¶ 3, 31 N.M. 521, 247 P. 550 (demonstrating the state district court's exercise of its general jurisdiction over a claim brought by a water rights claimant against another water rights claimant

11

alleging diversion in excess of the amount declared in a decree issued years before).

{15} Lujan argues that the district court has, since entry of the *Chacon* decree in 1962, jurisdiction to interpret and declare the relative water rights of parties in a given ditch or acequia associated with an adjudicated source, such as the Rio Puerco de Chama section. She contends that, in other cases, district courts have interpreted water rights decrees and determined the current rights of parties to a lawsuit based upon such decrees. Defendants, however, characterize the case differently. They maintain that Lujan's complaint requires the district court to determine the validity of the hydrographic survey and apply it to specific provisions of the *Chacon* Decree. Specifically, Defendants claim that Lujan seeks a declaration that the Martinezes do not own any of the 42.2 acres of land that she claims she possesses according to the *Chacon* Decree and that resolving the land ownership issue forces the court to determine the place of use of the decreed water rights. Defendants believe that the determination Lujan seeks will result in either a correction to Map 19 so that it shows the specific tracts of land that Lujan claims as her place of use, or a correction to the list of owners in the *Chacon* Decree. Either way, Defendants argue, "New Mexico law is crystal clear that the adjudication court has exclusive jurisdiction to make such determinations."

12

{16} The outcome of this issue hinges on what exactly Lujan alleges in her Complaint. *See Best*, 2017-NMCA-073, ¶ 20 ("The only relevant inquiry in determining whether the [district] court has subject matter jurisdiction is to ask whether the kind of claim advanced falls within the general scope of authority conferred upon [it] by the constitution or statute." (alterations, omission, internal quotation marks, and citations omitted)). Accordingly, we undertake a careful examination of Lujan's Complaint and conclude that she has not sought an adjudication of the water rights to the entire stream system. Rather, that claim was made decades ago by her predecessors-in-interest when they, several other water users, the Acequia, and two other nearby acequias initiated the *Chacon* lawsuit. Lujan's Complaint alleges facts pertaining to the ownership of the land identified in the *Chacon* Decree as belonging to her and to the distribution of water to acequia members by the Acequia. Generally, she claims that the Acequia has consistently failed to distribute water in accordance with the *Chacon* Decree. She also alleges that the Acequia called a special meeting to discuss its response to her original complaint, and in retaliation, changed its irrigation schedule in order to reduce Lujan's irrigation time. Unrelated to her particular claims involving the Martinezes, Lujan also alleges that the Acequia amended its bylaws after she filed her original complaint "purposefully and solely" to discriminate against her, applying its new bylaws and method of calculating irrigation hours in a way that

13

negatively impacts only her right to the use of water, and not any other acequia member. She claims as well that the Acequia engages in other harassing conduct, including removing rocks,

14

wooden structures, and headgates from her property, refusing to provide her with the irrigation schedule until after her irrigation date has passed, and refusing to allow her to speak at Acequia meetings.

{17} Essentially, Lujan seeks to enjoin the conduct of the Acequia that has resulted in her receiving less than the amount of water allotted to her in the *Chacon* Decree, that favors some Acequia members over others, and that she alleges constitutes harassment and discrimination. Lujan also sets forth numerous grounds potentially meriting declaratory relief. She requests a declaration from the district court that she has water rights appurtenant to 42.2 acres of land as declared in the *Chacon* Decree and that the Acequia must divert and distribute water according to the terms of the *Chacon* Decree. The Complaint also requests several declarations concerning the internal operations of the Acequia, including its holding of biennial meetings as required by Section 73-2-12, its imposition of assessments upon Acequia members based upon their adjudicated acreage, and its issuing of bonds according to Section 73-2-12. She also seeks damages based upon the Acequia's interference with her water rights and her inability to irrigate her property.

{18} Based on the foregoing claims and the relief sought, we conclude that the gravamen of Lujan's Complaint concerns the enforcement of an existing and valid court decree. It does not, as the Acequia argues, call for a "re-adjudication" of Lujan's water rights of a nature that affects all users of the Acequia or the Rio

15

Puerco stream system itself. *See United States v. Bluewater-Toltec Irrigation Dist.*, 580 F. Supp. 1434, 1438-41 (D.N.M. 1984) (rejecting the defendant's attempt to recast the plaintiff's complaint in order to achieve removal to federal court, and describing the defendant's characterization of the complaint as being completely in error for having oversimplified the complaint and ignoring the language of the complaint). Rather, the disputes Lujan's Complaint seeks to resolve involve the conduct of private parties governed by a valid court decree and other statutory provisions applicable to acequias and ditch associations. We see nothing within Lujan's Complaint that seeks an adjudication or re-adjudication of water rights that would affect the rights of all claimants to the entire stream system of which the Rio Puerco is a part. *See La Madera Cmty. Ditch Ass'n v. Sandia Peak Ski Co.*, 1995-NMCA-025, ¶ 7, 119 N.M. 591, 893 P.2d 487 (explaining that the plaintiff's cause of action was not "transformed from one based on trespass . . . to one based on an adjudication of water rights against all other appropriators of the water system[]" simply because the defendant disputed the validity of the plaintiff's water rights).

{19}     Thus, because Lujan has initiated litigation within a group of users governed as an acequia and under an existing decree, and is not seeking to adjudicate or re-adjudicate water rights of a broader stream system, Lujan's lawsuit falls within the general jurisdiction of the district court, not the adjudication court. Our evaluation

in this regard is buttressed by the State Engineer's motion to be dismissed as a party on the basis that it has no interest in the litigation or the outcome of Lujan's claims. In a hearing on the motion, the State Engineer's office explained that acequias, under Chapter 73, "can govern their water rights the way they want to[,]" which is "something the [c]ourt can determine without the presence of the State Engineer." The State Engineer is not involved in disputes concerning the water to be distributed to acequia members by the acequia; it is only concerned with the water that is distributed to the acequia at its headgate. Beyond that, the acequia conducts its business according to Chapter 73. We agree with the State Engineer's characterization of the nature of the dispute in this case.

## II.     Orders to Join Additional Parties

{20}     Lujan also appeals the June 2012 and February 2015 orders, each of which concluded that several unnamed parties were necessary to the litigation and required joinder in order for the case to proceed. Each order permitted Lujan time to amend her complaint to join the parties or else, as expressly stated in the February 2015 order, Lujan's complaint would be dismissed. She argues that the district court abused its discretion in ordering joinder of these parties because her lawsuit "will not prejudice any legal rights" of the parties named in the orders, as "they will not 'gain or lose' anything through this suit other than [the] protection of [their] already established legal rights[]" set forth in the *Chacon* Decree.

{21} The district court's orders, including its threat of dismissal, were based on the district court's misinterpretation of the nature of the dispute set out in Lujan's initial complaint, specifically, that Lujan sought enforcement of the *Chacon* Decree, rather than its re-adjudication. As this misinterpretation formed the foundation of its decision that the additional parties were necessary to the litigation of Plaintiff's claims, we conclude that the district court abused its discretion in ordering joinder of the parties. *See Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (explaining that a misapprehension of the law constitutes an abuse of discretion); *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." (internal quotation marks and citation omitted)).

{22} We therefore remand this case to the district court with instructions to reconsider the necessity of the joined parties based upon Lujan's causes of action and the relief she seeks, including those made pursuant to the Declaratory Judgment Act, her other statutory state law claims, and the requirements of Rule 1-019. On remand, the parties, including Lujan, shall be permitted to file such motions necessary to invoke rulings from the district court, establishing the proper parties to the litigation in light of our opinion.

# CONCLUSION

{23}    We reverse the district court's orders dismissing the suit for lack of subject matter jurisdiction and ordering the joinder of additional parties, and remand for proceedings consistent with this opinion.

{24}    **IT IS SO ORDERED.**


_____

**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____

**J. MILES HANISEE, Judge**


_____

**JULIE J. VARGAS, Judge**

19